Good morning. I'm Lawrence Padway. I'm representing the plan participant and appellant, Mr. Cuaresma. This is a case where the plan fiduciary did not act in a fiduciary manner. Simply put, the plan administrator denied the claim before it was filed, before the documents were complete. There had been some sort of a claim, but they said we want the documents in support of the claim by either November 2nd or November 3rd. Not all of the documents had been submitted. They decided to claim on October 30th before the time set. Your argument is they shouldn't have done that? Yes. That's an odd argument. That's facetious. We have to give it light up here. The plan, which is the document, which is the insurance policy, provided the clerk with an enlarged copy of parts of page 78 and 79 of the record. It's easy to read, but the process, it's a three-step process. The first thing that has to happen is you have to give notice of the claim. The second thing is the plan then sends you the claim forms, which ask for the information which the plan needs to adjudicate the claim. And then when that material comes back, that constitutes the proof of claim. The job of the plan administrator, and it's on the bottom of page 79, is that when there is a sufficient proof of claim, then they write the check. If you look through the policy, you can't file a lawsuit against the plan until at least 60 days have filed since the filing of the proof of claim. This policy sets dates off the filing of the proof of claim. It sets duties off the filing of the proof of claim. It's not, and certainly in a lot of these ERISA cases, there are small mistakes here and there. But this is not a small mistake. It's a big one. Well, there are two things that bother me about this case. One is the fact that he was told multiple times you've got to submit the claim forms. And then they give him the deadline and they get releases apparently and start gathering information from his treating physicians. And they tell him that if you don't submit anything, then we make the determination on the basis of what we have in our file. And it looks like that's what they ultimately did here. You say they pulled the trigger too soon. They should have waited three days before they announced the decision. But then there's this long, unexplained gap where nothing happens. He doesn't submit anything. He doesn't say to the insurance company, look, I was working on this thing and here's additional information that I want to give you. This long period of time goes by. And what's your explanation for the delay? Well, that's a good question. You have a good answer for it. I know it's a good question. I do not know how long it took him to find Mr. Linden to represent him. But there are not a lot of risk attorneys up in Sacramento, Northern California. It's not that easy to find people. It's not very easy to get lawyers to accept your case, especially after you've got a denial. He's got 180 days and he waits well beyond 180 days. Well, it's 180 days for an appeal, but he never does file an appeal. He says, this is not an appeal. He says, no, this is completing the information that you guys pulled the trigger on before you had it. So what went on during this time period is first he had to get a lawyer. And Mr. Linden's a very fine Social Security and ERISA lawyer. And the first thing a lawyer does is you don't just fill out the claim form and send it in. The first thing a lawyer does is orders the file. So, okay, then I get the file. So I have his letter saying sort of a notification of intent to file an appeal. But he says, first I want to get the file. When did he finally get the file? It was a process of about 30 days because the file came and there were things that couldn't be opened. And there was a little back and forth on it. But then what happened is he gets the file. And as I think any good ERISA attorney would do is you look for the claim to see what the allegations are. You look for the denial. And then you try and figure out what you need to fill in for the appeal. And he looks at the file and there's no claim. And actually at that point he sent the file to me. And I said, yeah, there's no claim in here. Somebody is. So then the question is, well, what do you do? But is he saying that he didn't know that he had to file a claim form? Because I thought they had multiple phone conversations. Yeah, but all of the information that he's. Well, first of all, they are confusing short-term and long-term. Because they're using a lot of the same forms for both. So they send a letter. If you look at these letters, some of them say short-term disability benefits. And on those, when they put a return date, that's probably okay. But on the long-term, the policy says you have until 30 days after the end of the elimination period, which is like November 20th of 2014, to file your claim. And it's a very odd. Your argument is that, in fact, he had until November 20th. They say you have until I think it's November 3rd. But then they don't even wait until November 3rd. They send a letter on October 30th. Here's my question for you. What is it that he would have sent that had not yet been sent, that would have then been in front of Liberty at the time they made their decision, had they waited until the expiration of the time period, whether November 3rd or November 20th? There are two items which are important. The first is that Mr. Kweresma naps in the afternoon. He has a two-hour nap, which makes it pretty hard to work. And there is a mention of that in Dr. Ketya's notes. And she says, I'm not sure why that's going on. But none of that was explored as a ground of disability. And that really is outlined in the claim forms which are submitted. You know, he describes his typical day, the fact that he runs very few errands, that his wife does the cooking, the cleaning. He doesn't work on the house. He doesn't work on the garden. But doesn't that cover all the period of time? It does. So I think Judge Fletcher is asking, and I have the same question, about the specific time period. What's going on in this, I'll call it a three-week period, maybe one month, in November, that he could have submitted that would have made a difference? Because as I read the file, even his own doctors were saying, we think he can go back to work with restrictions. No. To a sedentary job. Isn't that what they said? No, that's what the insurance company said they said, but that's not what they said. They crossed out that line in the letter. Dr. Ketya said that he could go back to work, didn't he? No. And this is a very interesting thing because on October 27th, Dr. Chambers says that he talks to Dr. Ketya, and he sends her a confirming letter that she told him that he could go back to work. Right. The next day, October 28th. And Chambers was the insurance company's reviewing cardiologist? The second one. The first insurance company consultant said, I agree with Dr. Ketya, he can't go back to this job. And that was Dr. Borzak in July. July before or July after? July before, July 14th. So they ignore that consultant. And they get a new consultant who says, oh, Dr. Ketya says he can go back to work. That's October 27th. But why wouldn't that be consistent with him improving between July and November? Excuse me. No, I get to ask the question. October 28th, Dr. Ketya responds, crosses out the line that says, you indicated that the record supports full-time work 8 hours a day, 5 days a week. Crosses that out and writes, patient has had recurrent angina in the past when he's returned to work. Which is the same thing she's told Dr. Borzak. Now, that correction is never considered by anyone in the complaint. Well, you know, I can accelerate this a little bit. Okay. I have this letter in front of me. This is Dr. Chandler's letter to Dr. Ketya. She crosses it out. The sentence she crosses out, you indicated that the record supports full-time work 8 hours a day, 5 days a week. She dates her sending back the 28th. It's unclear whether she sends it back by mail or by PDF. We then get a letter dated October the 30th, 2 days after Dr. Ketya has crossed that out and initialed it. And on page 2 of that letter, as far as supporting the denial, the medical record supports full-time work 8 hours a day, 5 days a week. That's the very sentence that was crossed out. It's not clear to me whether they're ignoring the cross out or they didn't even wait for it to come back. Or they didn't have it. It actually came back on October 28th. If you look, there's a fax stamp. So it was sent back electronically. Okay. So they have it. But they ignore it. It went back at least to Dr. Chandler. And we don't know what he did with it. But it seems to me that the denial letter is working off of the Dr. Chandler letter, not off of what came back. I mean, there's something really wrong with the way this claim was processed. Yes. And it was processed prematurely without waiting for. Now, you gave me kind of a wandering reply. You maybe can make it a little more focused. Okay. I asked you what was it that he had not yet sent back at the time the decision was made. Was it a narrative of daily activities? Or was it more than that? I mean, what was it that he had not yet sent? Basically, it is the claimant's statement of this is what I can do. This is what my typical day is. So your answer is yes. Yes. Yeah, there are some additional medical records, but those are not particularly significant. But what is significant is, and this is a lot like these ERISA cases, that the medical diagnosis doesn't tell you whether or not somebody is disabled. It just tells you whether or not the pain and fatigue that they're talking about is reasonable. Because there's no way to measure pain. There's no way to measure fatigue. And the credibility of the planned participant and the planned participant's statement is critical to these cases, which. . . Okay. Let's save you a little bit of time. We've got 57 seconds. Let's hear from the other side, and then we'll give you some time. Thank you. May it please the Court, my name is Sue Handelman, and I am appearing on behalf of the Long-Term Disability Plan and the plan administrator. I think, based on the discussion that's already occurred, it would be helpful probably to the whole discussion if we started out with the plan and what the plan calls for with respect to proof and what the plan calls for with respect to timing. So let's start with the proof. There's been a suggestion this morning, and there has been a suggestion before, that Mr. Quaresma and his counsel were entitled to ignore the denial letter, which was clearly understood by the employee and by Mr. Quaresma's attorney, based on his February his, the lawyer's, February 6th letter to Liberty, that it was a denial and that he intended to exercise his appeal rights. Well, he said, I intend to appeal, but first let me look at the file. Exactly. And when he looks at the file, he realizes what you guys have done. So he doesn't do an appeal. Well, the thing that he thinks he recognizes from the file is that there was no claim. That's the reason he says he didn't file an appeal. If we were simply wrong in the benefit denial, that's what an appeal is for. But the basis for his claiming that we, he didn't need to appeal, thus exhaust administrative remedies, which was the basis of the summary judgment below, was that there was no claim. And he says the claim file you sent me did not include Mr. Quaresma's completed LTD application form. And I gather what he's referring to is, say, the description of daily activities. And then, at the end, because Liberty Mutual issued a decision on his LTD claim without receiving his retired LTD proof of claim, I'm submitting here. Yes. Well, let's see what a ---- That sounds perfectly sensible to me. Well, let's ---- You don't wait for it. You've given him until November 3rd. You might have been supposed to have given him until November 20th. You decided on November 30th, excuse me, on October 30th. You miscite or misrepresent what Dr. Edia did, and for some reason he's upset. Well, let's talk about what was required. Was Liberty required to wait for that particular form, the activities form or any other form? What constitutes proof of claim? Under the policy on page 79, which Mr. Correia ---- I'm sorry, Mr. Quaresma's attorney just enlarged for the Court, it says proof must be given. It doesn't say by whom. It says proof must be given. It could be doctors, it could be hospitals, it could be other records. It must be given to Liberty by a certain date, which is no later than 30 days after the end of the elimination period, but if it's late, it doesn't affect your claim. That's what section B says. D covers what is a proof of claim. Proof must cover, if applicable. It doesn't say must consist of certain documents. It must cover date of disability, cause of disability, and degree of disability. That's what the proof is. You know, let me ask you this. If you're presenting your evidence in court and you've got five witnesses and the judge says, okay, I've heard from four, that's enough, have you had a fair shot? Well, the point, and I am sort of amiss or at a loss to answer the Court's question, I suppose there can never be enough evidence and it depends on what it has been. Well, no, let me be more precise about it. You say to him, you have until November 3rd, and I'll take for the moment November 3rd is the right date, and he has until November 3rd to submit support of his evidence supporting his claim. You don't wait until November 3rd. You say you're done and you decide the claim on October 30th and you say that's fair. That strikes me as just wrong. Well, and I can understand the point, Your Honor. I definitely understand it, and I understood it from the record below. But, again, we have to look at the timing. What does the plan require of Liberty? And you wait until he's had the appropriate amount of time to submit the proof in support of his claim, which you didn't do. Well, what the plan says, Your Honor, if you look at excerpts of record 191, which is the insurance policy certificate at page 51, it says, when must we notify you about a claim decision? And the plan requires that the administrator notify the claimant of a claim decision within a reasonable time, but not later than 45 days after receiving the claim. The claim for long-term disability benefits is documented in the record. It's the September 19th letter to Mr. Quaresma at excerpts of record 955 as opened on September 19th, 2014. Liberty, if you look at the claim notes, calendared its 45-day drop-dead period at September, I'm sorry, November 2nd. That's the way you read the policy. That's totally nuts. You read the policy as requiring you to issue a decision before the documentation is complete. That cannot be right. What that has to mean is within 45 days after the proof of claim is submitted and finished. Well, if Liberty. Otherwise, this is nuts. If Liberty has what is proof of claim, we're back to that original point of defining proof as the policy defines it. Proof as defined in the policy is date of disability, cause of disability, and degree of disability. Now, we did send Mr. Quaresma some additional forms, and we asked him to update his medical records so that we could make a timely decision in 45 days. And as Judge Tallman pointed out. Kennedy, what date did you give him that it had to be in by? We gave him five. We told him to assist us in deciding the applicability of long-term disability benefits. We would like you to fill out these five forms. I ask you, by what date did you tell him it had to be back? Oh, it makes sense. We told him November 3rd because that was the 45th day, and that is the date by which Liberty had to decide his claim. So you told him you have until November 3rd to submit all your forms, and you decide his claim on October 30th. Well, there's some. What's wrong with that? Well, I understand your skepticism, but let's look at what happened, according to the record, between September 19th and October 30th for or actually it was two business days before the expiration of Liberty's drop-dead date, 45th day. Note that ERISA does not require Liberty to wait until the 45th day to decide a claim. It says decide a claim as soon as possible, but not later than 45 days. What happened in those 45 days? So you're saying they could have decided it even earlier than October 30th? Yes. Before he submitted his other documents? I mean, this is getting worse and worse. Mr. Quaresma was sent some additional forms that Liberty said would be helpful and was requested to submit additional medical information. The medical information – oh, and as the medical information came in, Liberty was in communication with Mr. Quaresma. Mr. Quaresma, Liberty wrote, we have the medical records from Dr. Kedia. We still don't have them from Dr. Uppel. You haven't sent us your – the forms – you haven't returned the forms we sent you, the five pieces of paper. Please send them. We sent the forms to him three times. We had telephone conversations. They were reflected in the record, in the claim notes and phone notes. Please send in the forms. The plan does not – You said send in the forms by November 3rd. Exactly. And then you decided on October 30th. And on October 30th, in addition, we called Mr. Quaresma and said – and this is in the claim notes as well, phone note. It says, on October 30th, we're about to issue our denial letter. It's dated October 30th. We're just giving you a heads-up that this is coming. Mr. Quaresma, having been sent the forms three times, having been reminded to send the forms, doesn't say in the phone call, oh, but my forms, you don't have my forms. I'm working on my forms. Nothing. He says, thank you. That's reflected in the phone notes, the claim notes. Liberty sends its denial. And the next thing we get, plenty of time within the appeal period, is a letter from Mr. Quaresma's attorney. I have your denial letter of October 30th. We intend to appeal. And a person wants to see what's in the file. Exactly. And then you send him the file, and he realizes, oh, wait a minute. There's something wrong here. This was decided without the complete proof of claim. But, Liberty, and I hate to harp on this excessively, but proof of claim is date of disability, cause of disability, and degree of disability. It's true that we told him, if, and we told him repeatedly, if you have any other medical records, if you have any other materials you want to send us, send them in. We urge you to send them in. We called him. We told him to send them in. And he didn't, and he didn't do it. Now, Liberty, under the. He didn't do it by October 30th. He didn't, and he didn't indicate on October 30th or any time ever in the process of this case that he had, that he couldn't send the forms in, that he was prohibited from sending the forms in. And that's where we get to. My point is, is that Liberty did not violate the plan. But even if. Okay, now, you have 15 minutes to argue. You've now got 3 minutes and 43 seconds. What if I were to say, okay, you're done. You thought you had 15 minutes, but I've just given you 12. You're finished. Is that fair? We're not. What would you have said in those 3 minutes? I would have said, Judge, immediately, Your Honor, I have 3 more minutes pending. That's because you're an experienced lawyer. I don't think he was. No. Mr. Quaresma was given many more chances than I would have been by just being shoved off the podium. Mr. Quaresma was. Don't worry. I'm not. I was hoping not. I'm not going to do that. No, I know. It was for sake of example. But the point is, is that if you had said to me, you know, Ms. Handelman, you're going to be out of here in 2 minutes. You're going to be out of here in 1 minute. You're going to be out of here in 30 seconds. If I haven't said, oh, no, I have 3 minutes left, I think that that is worth noting anyway in the claim decision. And when Your Honor is asking about fairness. But what the point that I want to make, and I want to be clearly heard on this, is that proof of loss was in Liberty's possession. And as Judge Tallman noted, Liberty notified the claimant that if you don't send these materials in, we will decide it on the materials in our file. There was no violation of the ERISA plan by the procedure for the claim, for notice or, sorry, for proof of claim. Proof must cover date of disability, cause of disability, degree of disability. It doesn't say it has to be given by the claimant. Liberty had it. So there was no violation of the plan or ERISA in that regard. In terms of denying the plan. I'm reading the judge's order in this case, in which the judge says there's been no complaint and is unable to meet deadlines that were set. Well, that may be right, but he set a different deadline. By the way, did the judge write this order or was this supplied by your office? I'm sorry? I'm reading the judge's order of October 16th. Oh, it was. Was that order supplied by your office? It may have been, but it was a quote out of the hearing transcript. Well, there's no quotation marks, but this was not drafted by the judge? I don't know. Honestly, Your Honor, I can't recall. Well, your letter had information at the top of the first page of the order. Okay. I suspect you just signed the order. The trial lawyers may have drafted that. But the point is, second, that in terms of whether the claim was denied early, under ERISA law and under the terms of the plan as described in the insurance policy certificate, we had 45 days and it was timely. Now, the letter. If the court is concerned that the letter, even though the denial was timely and the proof was in the file, if the letter misled the claimant, the question is, does that excuse his compliance with ERISA law that he has to exhaust administrative remedies? And on that, the court, the trial court was very clear in that this, the 2-day, given the factual circumstances here, and every case has to be heard on its own factual circumstances. This was not an ambush. He was told to get the forms in by October 9th. He's got a very different definition of ambush. I mean, this precisely describes to me an ambush. You said you have until November 3rd, and then you decide the case before November 3rd. That strikes me as an ambush. It's the claim. The letter sent to Mr. Quaresma on September 19th says that although you have until November 2nd under the terms of your policy to submit this information, we ask that you submit it by October 9th. We were endeavoring to do exactly what ERISA requires, which is to have a dialogue with the claimant to make sure that his, that he has, that both sides understand what's going on. There is no doubt, Mr. Quaresma, based on multiple correspondences, September 19th, October 9th, October 13th, that we, in writing, and plus telephone calls, we were evaluating his long-term disability claim, and we wanted everything he wanted us to consider. And there was no indication from him, as the court, the trial judge said, there was no indication from Mr. Quaresma that he was, that he planned to submit this despite being asked repeatedly, that he, that he, when we told him the claim denial was going out on October 30th, that he was going to send it to us, hey, wait, there was no indication despite our repeated efforts to get it from him that he was going to send it. And so in this case, it must be noted that the, it would have been nice to have his submission, but it is not mandated. Those forms are not mandated by the plan, and the information, except for, as Mr. Quaresma's attorney said, his, his, the notion that he had to take naps was what was missing, and that that was noted in the medical file and commented on by Dr. Kedia, which was in the file. This is not about the claim denial. It's about exhaustion of administrative remedies. Mr. Quaresma had 180 days to, to comply, and, and he did not. Roberts. 180 days to appeal. Yes. He has up to a year to submit proof under the circumstances. That's right in the plan. Yes. Okay. Let's, let's. Thank you, Your Honors. Thank you. Let's, let's put a minute on the clock for the rebuttal. Mr. Quaresma. Thank you. The 45 day claim period, which counsel referred to, is found in the Department of Labor for calculating time periods. The period of time within which a benefit determination is required to be made shall begin at the time a claim is filed. Nothing was filed on September 19th. Your argument is claims not filed until we're finished with submitting all the documents to support it. I've got one question for you. What do you want? That is to say, one thing you could be wanting is send this back to the insurance company to decide the claim with the full documentation submitted. Not for us to sort of say they got it wrong, but just, hey, go back and do the job you didn't do. Is that what you want? Actually, I think the under subdivision L of the Department of Labor regulations, if there's a problem in the administrative processes, those are deemed exhausted. So it really should be a remand to the trial court for trial on the merits of the claim. But would you object to an order that says, listen, you never actually decided the claim. Would you now decide the claim? I don't think it makes a large difference since we have de novo review in any event. But I think that I wouldn't mind giving them a chance to actually decide the claim with the full documentation. Yeah, I wouldn't have a problem with that. Is this something that you guys could work out through mediation? I mean, do we really have to go back to litigation? Yes. We do. Okay. Sorry. Have a nice litigation. All right. Okay. Now we're over time. Yeah, so. If you could wrap up then. But in response to your question, you might want to look at bill U, BIL, YEU versus Morgan Stanley. Okay. I'm over time, so it's okay. Thank both sides. Case of Charisma versus Farmer's Group Disability Income Plan on the Liberty Life Insurance Company of Boston, which really seems to be from Kentucky, submitted. Okay. And we will take a ten-minute break, and then we'll come back and hear about Macau.
judges: W. Fletcher, Tallman, Morris